UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
CASE NO. 6:25-cv-163

**JONATHAN DRUMMOND**,

    Plaintiff,

vs.

**I LOVE SUGAR, INC.; and**

**I LOVE SUGAR DAYTONA, LLC,**

    Defendants.

                                /

_____

## COMPLAINT

Plaintiff JONATHAN DRUMMOND, by and through undersigned counsel, sues Defendants I LOVE SUGAR, INC., a South Carolina for-profit corporation, and I LOVE SUGAR DAYTONA, LLC, a Delaware Limited Liability Company, and alleges as follows:

1.    This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2.    This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA. Plaintiff seeks

declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3.      Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Middle District of Florida.

4.      Plaintiff JONATHAN DRUMMOND is a resident of Volusia County, Florida, is sui juris, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.      Plaintiff is, and at all relevant times, has been blind and visually disabled in that Plaintiff suffers from optical nerve atrophy as a result of retinoblastoma, which is a permanent eye and medical condition that substantially and significantly impairs his vision and limits his ability to see. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq.*, and 42 U.S.C. §3602(h). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6.      Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.

7.     Because he is blind, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and/or other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y.2017).

8.     Defendant, I LOVE SUGAR, INC., is a South Carolina for-profit corporation authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls a chain of 4 U.S. based stores offering a unique and immersive candy retail experience, including the store Plaintiff intended

to patronize in the near future (and as early as January and/or early February 2025), which is located at 1100 Cornerstone Boulevard, Suite 1055, Daytona Beach, FL 32117.

9.    Defendant, I LOVE SUGAR DAYTONA, LLC, is a Delaware Limited Liability Company authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls a store offering a unique and immersive candy retail experience, the store Plaintiff intended to patronize in the near future (and as early as January and/or early February 2025), which is located at 1100 Cornerstone Boulevard, Suite 1055, Daytona Beach, FL 32117.

10.    Plaintiff's blindness limits Plaintiff in the performance of major life activities, including sight, and Plaintiff requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

11.    Plaintiff frequently accesses the internet. Because Plaintiff is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

12.    At all times material hereto, Defendants were and still are organizations that own, operate, and/or control a chain of 4 U.S. based stores under the name "I LOVE SUGAR". Each "I LOVE SUGAR" store is open to the public. As the owners, operators, and/or controllers of these stores, Defendants are defined as a place of

4

"public accommodation" within the meaning of the ADA per 42 U.S.C §12181 and 28 C.F.R. §36.104.)

13.    Because Defendants operate stores open to the public, each of Defendants' physical locations is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7), and its implementing regulations, 28 C.F.R. Part 36.

14.    Defendants also own, control, maintain, and/or operate an adjunct website, https://www.ilovesugar.com / (the "Website"). One of the functions of the website is to provide information about the store locations and contact details. Additionally, it allows customers to browse and purchase a wide variety of sweets, including giant gummy bears, novelty gummy candies shaped like pizzas, burgers, and watermelons, curated candy boxes, cotton candies in creative flavors, as well as exclusive plush toys inspired by gummy bears. The website also offers convenient online shopping options, allowing customers to order online with home delivery option, add items to wish list, track orders, save favorite products for quick reordering, check gift card balances, and make reservations for the in-store Candy Martini Bar. Customers can create accounts to benefit from a personalized shopping experience, faster checkouts, and order history management, they can also explore the vibrant photo gallery, which showcases the playful design of I LOVE SUGAR stores. For career opportunities, the dedicated careers section provides information about current openings and how to join the I LOVE SUGAR team. The website

includes a comprehensive FAQ section, details about shipping and return policies, and a contact form for inquiries. Finally, visitors are encouraged to connect with I LOVE SUGAR on social media or subscribe to the e-newsletter to stay updated on news, promotions, product launches, and community updates.

15.    The Website also services Defendants' physical stores by providing information about locations, available products, services, tips and advice, editorials, sales campaigns, events, and other information that Defendants are interested in communicating to their customers.

16.    Because the Website allows the public the ability to secure information about the locations of Defendants' physical stores, browse and purchase a wide variety of sweets and toys, order online with a home delivery option, add items to wish list, track orders, save favorite products for quick reordering, check gift card balances, make reservations for the in-store Candy Martini Bar, create accounts to benefit from a personalized shopping experience, faster checkouts, and order history management, explore the vibrant photo gallery showcasing the playful design of I LOVE SUGAR stores, view career opportunities through a dedicated section that offers information about current openings and how to join the I LOVE SUGAR team, read FAQ section, learn details about shipping and return policies, contact the company for inquiries via an online form, connect with I LOVE SUGAR on social media or subscribe to the e-newsletter to stay updated on news, promotions, product launches, and community updates, the Website has a nexus to, and is an extension

of and gateway to, the goods, services, privileges, and advantages of Defendants' physical stores, which are places of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendants at and through their brick-and-mortar stores and businesses. Furthermore, the Website is a necessary service and privilege of Defendants' physical stores in that, it acts as a critical point of sale for the stores, it enables users of the Website to make purchases of Defendants' merchandise that is also available for purchase in, from, and through their physical stores.

17.    Because the public can browse and purchase a wide variety of sweets, including giant gummy bears, novelty gummy candies shaped like pizzas, burgers, and watermelons, cotton candies in creative flavors, as well as exclusive plush toys inspired by gummy bears, order online with a home delivery option, add items to wish list, track orders, save favorite products for quick reordering, check gift card balances, make reservations for the in-store Candy Martini Bar, create accounts to benefit from a personalized shopping experience, faster checkouts, and order history management, explore the vibrant photo gallery showcasing the playful design of I LOVE SUGAR stores, view career opportunities through a dedicated section offering information about current openings and how to join the I LOVE SUGAR team, read FAQ section, learn details about shipping and return policies, contact the

company for inquiries via an online form, connect with I LOVE SUGAR on social media or subscribe to the e-newsletter to stay updated on news, promotions, product launches, and community updates, the Website is an extension of, and gateway to the physical stores, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Website is a necessary service, privilege, and advantage of Defendants' brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical stores.

18.    At all times material hereto, Defendants were and still are organizations owning, operating, and/or controlling the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendants' brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical stores. As such, Defendants have subjected themselves and the Website to the requirements of the ADA.

19.    Plaintiff is and/or has been a customer who is interested in patronizing,

8

and intends to patronize in the near future once the Website's access barriers are removed or remedied (and as early as January and/or early February 2025), Defendants' physical store located at 1100 Cornerstone Boulevard, Suite 1055, Daytona Beach, FL 32117, and to search for brick-and-mortar stores that are in closest proximity to Plaintiff, browse and purchase a wide variety of sweets and toys, order online with a home delivery option, add items to wish list, track orders, save favorite products for quick reordering, make reservations for the in-store Candy Martini Bar, create personal account to benefit from a personalized shopping experience, faster checkouts, and order history management, explore the vibrant photo gallery showcasing the playful design of I LOVE SUGAR stores, read FAQ section, learn details about shipping and return policies, contact the company for inquiries via an online form, connect with I LOVE SUGAR on social media or subscribe to the e-newsletter to stay updated on news, promotions, product launches, and community updates. In the alternative, Plaintiff intends to monitor the Website in the near future (and as early as January and/or early February 2025) as a tester to ascertain whether it has been updated to interact properly with screen reader software.

20.    The opportunity to browse and purchase a wide variety of products, including giant gummy bears, novelty gummy candies shaped like pizzas, burgers, and watermelons, cotton candies in creative flavors, as well as exclusive plush toys inspired by gummy bears and curated candy boxes, order online with a home

delivery option, add items to wish list, track orders, save favorite products for quick reordering, check gift card balances, make reservations for the in-store Candy Martini Bar, create accounts to benefit from a personalized shopping experience, faster checkouts, and order history management, explore the vibrant photo gallery showcasing the playful design of I LOVE SUGAR stores, view career opportunities through a dedicated section that offering information about current openings and how to join the I LOVE SUGAR team, read FAQ section, details about shipping and return policies, contact the company for inquiries via an online form, connect with I LOVE SUGAR on social media or subscribe to the e-newsletter to stay updated on news, promotions, product launches, and community updates from Plaintiff's home are important and necessary accommodations for Plaintiff because traveling outside of Plaintiff's home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendants have not provided their business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

21.    Like many consumers, Plaintiff accesses a number of websites at a time to help plan his store visits and to compare merchandise, prices, services, sales, discounts, and promotions. Plaintiff may look at several dozen websites to compare features, discounts, services, promotions, and prices.

22.    Beginning in December 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the services and merchandise to

educate himself as to the products, sales, services, discounts, and promotions being offered, learn about the brick-and- mortar stores, search for brick-and-mortar stores that are in closest proximity to Plaintiff, and check product pricing with the intent to make a purchase through the Website or in, from, and through the physical stores. Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

23.    Plaintiff enjoys exploring various local candy shops and trying new, unique treats and flavors he had not tasted before. On or about December 26, 2024, the Plaintiff used an NVDA screen reader to search for local places that offer a wide range of creative candy options. Among the search results, he found I LOVE SUGAR's website and decided to explore their offerings. However, upon accessing the site, the Plaintiff encountered multiple accessibility issues that made navigation difficult. One major issue was that the dialog box indicating that the product had been added to the cart did not receive focus after the Plaintiff decided to buy it, nor were any announcements to inform him about the successful action on the page. This lack of feedback left the Plaintiff confused and unsure about whether the giant gummy bear had been added to his cart, hindering his ability to complete the purchase. Ultimately, the Plaintiff was unable to finalize his order on I LOVE SUGAR's website.

24.    Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites.

However, Defendants' Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

a. "Skip to content" link was not implemented. Plaintiff was not provided with the mechanism to bypass repeated blocks of content;

b. Landmarks were not properly inserted into the home page. Plaintiff tried to bypass Navigation menus and could not access "main" and "content info" regions of the page using landmarks;

c. The content on the home page was organized into sections with headings, but they were not correctly marked up and did not programmatically identify sections of the page. Plaintiff was deprived of the actual heading structure that was available to sighted customers and could not effectively navigate the content on the home page;

d. Plaintiff could not access sub-menu elements from the Navigation menu using the keyboard. Plaintiff tried to use "tab" or "arrow" keys to no avail. The website had functionality that was dependent on the specific devices such as a mouse, and was not available to the legally blind users;

e. The Navigation menu contained elements with drop-down menu, and they did not announce their state - "collapsed" or "expanded". As a result, Plaintiff was unaware of the additional links that he might have accessed;

f. Unclear and ambiguous labels for form fields, specifically, the "search" field, impeded Plaintiff from using search functionality of the website for a quick and efficient navigation. Plaintiff was unaware of the purpose of the interactive element as the name of the element was announced as "edit blank";

g. Interactive elements (Search button, Continue as Guest button) on the web page had poor and non-descriptive name. Plaintiff could not identify the purpose of the interactive element;

h. Plaintiff was forced to repeatedly tab through elements with the same destination: the link text of products conveyed similar information and led to the same destinations as interactive images above the links;

12

i.  Several links had ambiguous texts, for example "previous" and "next" links from the Product Detail page, that were unclear to Plaintiff. Lack of detailed description of the link target and destination made it difficult for Plaintiff to perceive the purpose of the link;

j.  Interactive elements (Next, Previous) from the product gallery on the Product Detail page that behaved as "buttons" were not programmatically written correctly. Instead of using a "role" attribute, they were built by <a> tag. As a result, the screen reader software read the incorrectly constructed element and Plaintiff was confused, because of receiving ambiguous information about the element in focus;

k.  Multiple images on the Product Detail page had no alternative text. Plaintiff was unaware what non-text content was presented on the page and what information was missed;

l.  Interactive element (drop-down menu) on the Product Detail page was not keyboard focusable. The website had functionality that was dependent on specific devices such as the mouse, and was not accessible to Plaintiff;

m. Plaintiff attempted to purchase the product and as a result, the confirmation dialog box opened, but the focus did not move from trigger button to dialog items. Plaintiff was confused when he was unable to navigate through the content with the keyboard;

n.  In an attempt to add the selected item to cart, a confirmation message appeared on the page but its content was not announced by the screen reader software. Plaintiff was not informed whether the product was successfully added to cart and he could proceed to Checkout;

o.  After adding the selected item to the Cart, it did not announce its value information. Thus, Plaintiff did not know whether his selection was successful and how many items were placed in the Cart;

p.  Plaintiff was unable to determine if the form fields at Checkout were mandatory ("Required"). The lack of detailed instructions while filling in the form, prevented Plaintiff from successful submission of personal information.

25.      Accordingly, Defendants' Website was incompatible with Plaintiff's screen reading software and keyboard.

26.    The fact that Plaintiff could not communicate with or within the Website left Plaintiff feeling excluded, frustrated, and humiliated, and gave Plaintiff a sense of isolation and segregation, as Plaintiff is unable to participate in the same shopping experience, with the same access to the merchandise, sales, services, discounts, as provided at the Website and in the physical stores as the non-visually disabled public.

27.    Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendants' physical store located at 1100 Cornerstone Boulevard, Suite 1055, Daytona Beach, FL 32117, and to use the Website, but Plaintiff is presently unable to do so as Plaintiff is unable to effectively communicate with Defendants due to Plaintiff's blindness and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendants through the Website due to Plaintiff's blindness and the Website's access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendants' intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

28.    Because of the nexus between Defendants' physical stores and the Website, and the fact that the Website clearly provides support for and is connected to Defendants' physical stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendants' brick-and-mortar stores that must

comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodation subject to the requirements of the ADA.

29.    On information and belief, Defendants have not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

30.    On information and belief, Defendants have not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

31.    On information and belief, Defendants have not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

32.    On information and belief, Defendants have not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

33.    On information and belief, Defendants have not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities

34.    On information and belief, Defendants have not instituted a Bug Fix

Priority Policy.

35.     On information and belief, Defendants have not instituted an Automated Web Accessibility Testing program.

36.     Defendants have not created and instituted a useful and effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

37.     Defendants have not created and instituted on the Website a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendants will have the Website, applications, and digital assets accessible to the visually disabled and/or blind communities.

38.     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.2 Level AA or higher versions of web accessibility.

39.     Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendants' merchandise offered on the Website and in the physical stores from their homes.

40.     Defendants thus have not provided full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and the physical stores in contravention of the ADA.

41.     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

42.     The broad mandate of the ADA is to provide equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet e-commerce websites such as the Website at issue in the instant action.

43.     Defendants are, and at all relevant times have been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

44.     Defendants are, and at all relevant times have been, aware of the need to provide full and equal access to all visitors to the Website.

45.     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

46.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendants' unlawful and discriminatory practices in connection with the Website's access and operation.

47.     Notice to Defendants is not required because of Defendants' failure to cure the violations.

48.    Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

49.    Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

## AGAINST I LOVE SUGAR, INC.

50.    Plaintiff re-alleges paragraphs 1 through 49 as if set forth fully herein.

51.    Pursuant to 42 U.S.C. §12181(7), Defendant, I LOVE SUGAR, INC., is a public accommodation under the ADA and thus is subject to the ADA.

52.    Pursuant to 42 U.S.C. §12181(7), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendant, I LOVE SUGAR, INC.'s physical stores, browse and purchase a wide variety of products, including giant gummy bears, novelty gummy candies shaped like pizzas, burgers, and watermelons, cotton candies in creative flavors, exclusive plush toys inspired by gummy bears and curated candy boxes, order online with a home delivery option, add items to wish list, track orders, save favorite products for quick reordering, check gift card balances, make reservations for the in-store Candy Martini Bar, create accounts to benefit from a personalized shopping experience, faster checkouts, and order history management, explore the vibrant photo gallery showcasing the playful design of I LOVE SUGAR, INC. stores, view career

opportunities through a dedicated section offering information about current openings and how to join the I LOVE SUGAR, INC. team, read FAQ section, details about shipping and return policies, contact the company for inquiries via an online form, connect with I LOVE SUGAR, INC. on social media or subscribe to the e-newsletter to stay updated on news, promotions, product launches, and community updates. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant, I LOVE SUGAR, INC.'s physical stores. Further, the Website serves to augment Defendant, I LOVE SUGAR, INC.'s, physical locations by providing the public information about the stores and by educating the public as to Defendant, I LOVE SUGAR, INC.'s available merchandise sold through the Website and in, from, and through the physical stores.

53.    Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

54.    Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless

the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

55. In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

56. Defendant, I LOVE SUGAR, INC.'s Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

57. Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of, the goods, information, and services that Defendant, I LOVE SUGAR, INC., has made available to the public on the Website and in the physical stores in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

58. More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

59. Further, the Website does not offer or include the universal symbol for

the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

60.    There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, accurately labeling interactive elements, implementing navigation links, and providing advance warnings for content changes. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant, I LOVE SUGAR, INC.'s business nor would it result in an undue burden to Defendant, I LOVE SUGAR, INC.

61.    Defendant, I LOVE SUGAR, INC., has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. Defendant, I LOVE SUGAR, INC., has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations within the Website are ongoing.

62.    The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

63.    According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services

21

include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

64.    According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

65.    Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

66.    As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

67.    As a direct and proximate result of Defendant, I LOVE SUGAR, INC.'s failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar

stores, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant, I LOVE SUGAR, INC.'s Website and its physical stores.

68.    Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

69.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a)  Require Defendant, I LOVE SUGAR, INC., to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendant, I LOVE SUGAR, INC.'s policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical stores through the Website.

b)  Require Defendant, I LOVE SUGAR, INC., to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant, I LOVE SUGAR, INC., to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant, I LOVE SUGAR, INC.'s physical stores and becoming informed of and purchasing Defendant, I LOVE SUGAR, INC.'s products, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and in the physical stores.

70.    Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

## COUNT II – VIOLATION OF THE ADA

## AGAINST I LOVE SUGAR DAYTONA, LLC

71.    Plaintiff re-alleges paragraphs 1 through 49 as if set forth fully herein.

72.    Pursuant to 42 U.S.C. §12181(7), Defendant, I LOVE SUGAR DAYTONA, LLC, is a public accommodation under the ADA and thus is subject to the ADA.

73.    Pursuant to 42 U.S.C. §12181(7), the Website is covered under the

ADA because it provides the general public with the ability to locate and learn about Defendant, I LOVE SUGAR DAYTONA, LLC's physical store, browse and purchase a wide variety of products, including giant gummy bears, novelty gummy candies shaped like pizzas, burgers, and watermelons, cotton candies in creative flavors, exclusive plush toys inspired by gummy bears and curated candy boxes, order online with a home delivery option, add items to wish list, track orders, save favorite products for quick reordering, check gift card balances, make reservations for the in-store Candy Martini Bar, create accounts to benefit from a personalized shopping experience, faster checkouts, and order history management, explore the vibrant photo gallery showcasing the playful design of I LOVE SUGAR DAYTONA, LLC store, view career opportunities through a dedicated section offering information about current openings and how to join the I LOVE SUGAR DAYTONA, LLC team, read FAQ section, details about shipping and return policies, contact the company for inquiries via an online form, connect with I LOVE SUGAR DAYTONA, LLC on social media or subscribe to the e-newsletter to stay updated on news, promotions, product launches, and community updates. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant, I LOVE SUGAR DAYTONA, LLC's physical store. Further, the Website serves to augment Defendant, I LOVE SUGAR DAYTONA, LLC's, physical location by providing the public information about the store and by educating the public as to Defendant, I LOVE SUGAR DAYTONA, LLC's available

merchandise sold through the Website and in, from, and through the physical store.

74.    Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

75.    Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

76.    In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue

burden."

77.    Defendant, I LOVE SUGAR DAYTONA, LLC's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

78.    Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of, the goods, information, and services that Defendant, I LOVE SUGAR DAYTONA, LLC, has made available to the public on the Website and in the physical store in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

79.    More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

80.    Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

81.    There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, accurately labeling interactive elements, implementing navigation links, and providing advance warnings for content changes.  Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant, I LOVE SUGAR DAYTONA, LLC's business nor would it result in an undue burden

27

to Defendant, I LOVE SUGAR DAYTONA, LLC.

82.    Defendant, I LOVE SUGAR DAYTONA, LLC, has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. Defendant, I LOVE SUGAR DAYTONA, LLC, has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations within the Website are ongoing.

83.    The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

84.    According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

85.    According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a

disability," 28 C.F.R. §36.303(c)(1)(ii).

86.    Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

87.    As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

88.    As a direct and proximate result of Defendant, I LOVE SUGAR DAYTONA, LLC's failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar store, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant, I LOVE SUGAR DAYTONA, LLC's Website and its physical store.

89.    Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

90.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

d) Require Defendant, I LOVE SUGAR DAYTONA, LLC, to adopt and

implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendant, I LOVE SUGAR DAYTONA, LLC's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical store through the Website.

e) Require Defendant, I LOVE SUGAR DAYTONA, LLC, to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

f) Require Defendant, I LOVE SUGAR DAYTONA, LLC, to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant, I LOVE SUGAR DAYTONA, LLC's physical store and becoming informed of and purchasing Defendant, I LOVE SUGAR DAYTONA, LLC's products, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and in the physical store.

91.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants for the following relief:

A.  A declaration that Defendants' Website is in violation of the ADA;

B.  An Order requiring Defendants, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C.  An Order requiring Defendants, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendants' accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of

---

[1]  or similar.

the accessible features of the Website;

D. An Order requiring Defendants, by a date certain, to provide ongoing support for web accessibility by implementing a Website accessibility coordinator, a Website application accessibility policy, and providing for Website accessibility feedback to ensure compliance thereto;

E. An Order directing Defendants, by a date certain, to evaluate their policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendants to undertake and complete corrective procedures to their Website;

F. An Order directing Defendants, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendants' Website to be fully accessible to the visually disabled;

H. An Order directing Defendants, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable

accessibility guidelines;

I.   An Order directing Defendants, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendants to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.   An Order directing Defendants, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendants' Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.   An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

L.   Such other and further relief as the Court deems just and equitable.

DATED: January 31, 2025.

**ALEKSANDRA KRAVETS, ESQ. P.A.**
Lead Counsel for Plaintiff
1100 Buchanan Street
Hollywood, FL 33019
Phone: 347-268-9533
Email: ak@akesqpa.com

By: _____*/s/ Aleksandra Kravets, Esq.*
        Aleksandra Kravets, Esq.
        FBN: 120562